KYRELL DANTE HARDY, )
)
Plaintiff, )
)
v. ) No. 3:25-CV-553-KAC-DCP
)
DAVID P. STEINER, *et al.*, )
)
Defendants. )
)

## MEMORANDUM AND ORDER

This case is before the Court pursuant to 28 U.S.C. § 636, the Rules of this Court, and Standing Order 13-02.

Now before the Court is Plaintiff's Application to Proceed in District Court Without Prepaying Fees or Costs, as supplemented ("Application") [Docs. 1, 9] and Complaint [Docs. 1, 10][1]. For the reasons more fully stated below, the Court **HOLDS IN ABEYANCE** Plaintiff's Application [**Docs. 1, 9**].

Under the Prison Litigation Reform Act of 1995 ("PLRA"), the Court is required to screen complaints. 28 U.S.C. § 1915. To accomplish this end, the Court must evaluate the litigant's indigence, but notwithstanding indigence, a court must dismiss a matter under 28 U.S.C. § 1915(e)(2)(B) if [it] determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." To survive an initial review, a complaint "must contain sufficient

---

[1] Plaintiff filed his initial Complaint [Doc. 1] on November 13, 2025, and during the pendency of the screening process, he filed an Amended Complaint [Doc. 10] on January 27, 2026. Both have been considered by the Court.

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v Twombly*, 550 U.S.544, 570 (2007)).

Specifically, under Rule 8(a) of the Federal Rules of Civil Procedure, a pleading must provide:

> (1) a short and plain statement of the grounds for the court's jurisdiction . . . ;
>
> (2) a short and plain statement of the claim showing that the pleading is entitled to relief; and
>
> (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Fed. R. Civ. P. 8(a)(1)–(3). Otherwise, the complaint is subject to dismissal under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Courts also have a continuing duty to ensure that jurisdiction exists to hear the case. *Answers in Genesis, Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 465 (6th Cir. 2009) ("[F]ederal courts have a duty to consider their subject matter jurisdiction in regard to every case and may raise the issue *sua sponte*." (citations omitted)). Courts liberally construe pro se pleadings filed in civil rights cases and hold them to a less stringent standard than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

### A. Summary of the Complaint

Plaintiff names the following Defendants in his initial Complaint: David P. Steiner, the Postmaster General for the United States Postal Service ("USPS"); Raymond Kelly, Jr.; and Matthew Blasco [Doc. 1 p. 2]. In his Amended Complaint, Plaintiff adds the following Defendants: USPS Human Resources Specialist Julia Fermamento; National Labor Relations Specialist and Reasonable Accommodation Board Member Paul Ahnert; USPS Nurse and Reasonable Accommodation Board Member, Jami Green; USPS Knoxville Acting Plant Manager Jeremy

Hotchkiss; the United States Department of Labor Worker's Compensation Board; United States Postal Office; and Office of Personnel Management [Doc. 10 p. 2].

Plaintiff's initial Complaint consists of 112 pages, and his Amended Complaint consists of 1,041 pages, for a total of 1,153 pages. Both include voluminous unexplained exhibits, some with handwritten allegations on the margins of the page [*See e.g.* Doc. 2-1 pp. 71, 73–75, 80, 83]. In his original Complaint, Plaintiff seeks "reprisal for and [breach] of [his] 2024 D.R.A.C. and 2025 EEOC agreements with [USPS]" [Doc. 2 p. 1].[2] He alleges that on February 15, 2024, "accommodation for [him] was established by DRAC" and that "it was agreed that [he would] be able to leave work if [he] felt attacked" [Doc. 2-1 p. 8]. According to Plaintiff, "Matt Blasco and Ray Kelly claimed to have been unaware of the Department of Labor's May 27, 2025 request to keep [him] placed on light duty" and he was instructed to "return to regular duty" [*Id.*]. Plaintiff says that he "immediately invoked [his] DRAC accommodation privilege to leave early" and that he was placed "on emergency placement for 'not following a direct order'" [*Id.*]. As he was leaving the premises, Plaintiff states that "Matt Blasco and Ray Kelly both immediately recanted their statement so as to paint [him] as a threat" [*Id.*]. He avers that they knew of his "protected status and lack of transportation" and that the "order change[d] to leave the premises; an order [Plaintiff] will not follow because he has to locate an uber at 2:00 a.m." [*Id.*].

Plaintiff alleges that "Ray Kelly hurried to close the metal gate door so as to prevent [him] from getting through it . . . [and] lunged his foot in the space of the door frame . . .[,] creat[ing] physical contact between himself and [Plaintiff]" [*Id.* at 7]. He submits that "Ray Kelly and Matt

---

[2]     EEOC is construed as reference to the Equal Employment Opportunity Commission. In the context of employment, DRAC typically refers to the District Reasonable Accommodation Committee. *See Cheatham v. Postmaster General of the U.S.*, No. 20-4091, 2022 WL 1073818, at *3 (6th Cir. Apr. 11, 2022) ("Cheatham requested an accommodation meeting with the District Reasonable Accommodation Committee.").

Blasco also violated [his] right and privilege of posting [an] OSHA complaint . . . by harassing [him] because [he] posted it" [*Id.*]. Plaintiff states that "Ray Kelly and Matt Blasco threatened to suspend [him] after they refused to honor his DRAC agreement allowing [him] to end [his] shift early if needed" and that they "dis[]honored the Department of Labor's request for a light duty work assignment for [himself,] which was [his] reason for leaving" [*Id.*]. Plaintiff contends that "they did not want [him] to work in Operation 030, although, it had been requested by the Department of Labor on May 27, less than three weeks prior to the day in question" and instead that they "wanted [him] to work in automation" [*Id.*].

Plaintiff alleges that as he "was leaving, they followed [him], creating an impression as though they were protecting the employees from a hostile employee" [*Id.*]. Plaintiff claims that the police were called "as soon as Ray Kelly collided into [him] and that's when [he] was officially fired" [*Id.*]. Plaintiff states that "the police and [his] uber driver both arrived at the same exact time, creating a reasonable doubt that [he] intended on attacking Ray Kelly" [*Id.*]. He contends that he "was aggravatedly assaulted by Ray Kelly because he tried to [slam] the door in [Plaintiff's] face and all of this happened before [he] could receive [his] agreed upon KSA training and worker comp claim compensation" [*Id.*].

Plaintiff asserts that his firing was "retaliation after the EEOC agreement that had not yet been fully honored because no-one received harassment training before [Plaintiff] was fired and USPS HR official, Julia Fermamento, continues to challenge [Plaintiff's] four worker comp claims" [*Id.* at 8]. He also asserts that "this was an act of retaliation against [Plaintiff's] lawful actions toward USPS between December, 2021 until present" [*Id.*].

Plaintiff states that he was fired from the Post Office on July 15, 2025, and that "Thrift Savings Plan Representatives told [Plaintiff] to expect a waiting time of two pay periods after his

termination date, for his termination status to affect his thrift savings plan employment stats" and that his "[USPS] supervisor and MDO (Matthew Blasco) was supposed to fill out T.S.P. Form-41" [*Id.* at 9]. Plaintiff contends that "three pay periods have past as of today and none of these administrative actions had been implemented" [*Id.*]. Plaintiff contacted a "Tour 1 MDO," but was informed that "his employment status in the USPS E.R.M.S. system is 'leave without pay pending termination'" [*Id.*]. Plaintiff alleges that "because of this, [he] has been unable to extract the financial resources from his Thrift Savings Plan account to support himself and his family" [*Id.*]. Plaintiff alleges that "six months ago, a settlement agreement between [Plaintiff] and USPS Attorney, Kristi Irons was established when Attorney Irons verbally agreed that there would be no retaliation on the part of USPS officials" [*Id.*]. Plaintiff claims that "she made a verbal contract . . . on behalf of USPS and breached the verbal contract" [*Id.*].

On September 12, 2025, Plaintiff represents that he "was told by USPS human resources officials that P.S. Form 6075 career separation worksheet, was needed before the separation code can be sent and Matthew Blasco . . . was supposed to [have] fax[ed] all information to them when he terminated [Plaintiff's] employment at USPS on July 15, 2025" [*Id.* at 7]. Plaintiff states that without that code, he "wouldn't be able to access the funds in his TSP account" and that he was informed by human resources officials that "this process should've been completed by now" [*Id.*]. Plaintiff states he is "still listed as an active employee at USPS" despite being terminated on July 15 and that "his termination status was adjudicated by the Department of Labor on August 11, 2025 and his request for unemployment benefits was [approved]" [*Id.*]. Plaintiff contends that "if this isn't what normally happens when someone's employment gets terminated, it's an act of discrimination and not a clerical error because [Plaintiff] had been working in close liaison with

5

USPS management, human resources, and thrift savings plan officials to ensure that his termination process was completed properly" [*Id.*].

In his Amended Complaint, Plaintiff states that he has "attached supporting documentation that [implicates] all named [p]arties above, in violations written below; some not included in all but, all are [implicated] in at least[] one violation of cited Acts, Agreements, Contracts, Treaties, Codes [a]nd Laws written below" [Doc. 10-1 p. 5]. This referenced supporting documentation consists of over 1000 pages, and the Court cannot ascertain what claim Plaintiff asserts against which Defendant because he generally states all are implicated.

Plaintiff requests that he "be fully reinstated back to full employment of USPS immediately," for an award of 5 million dollars, and that "USPS must take full responsibility and hold themselves accountable for [Plaintiff's] reported work[-]related injuries to the [Department] of Labor" [*Id.* at 3]. He also requests "out of schedule premium wages with night differential, overtime and holiday wages and benefits paid to [him] retroactively from June 18, 2025" and retroactive pay for all workers' compensation claims "with all claims from [him] accepted by [the] Workers' Compensation Board" [Doc. 10 p. 3].

**B.     Analysis**

The Court finds that Plaintiff's Complaint and proposed Amended Complaint violates Rule 8 of the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In general, "[e]ach allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(e). The purpose of the "short and plain" requirement is to give opposing parties fair notice of the claim against them and the grounds upon which it rests and to assure the Court that if the factual allegations are proven true, the plaintiff has a legal right to relief.

6

*Kensu v. Corizon, Inc.*, 5 F.4th 646, 650 (6th Cir. 2021) (citations omitted). And, "[n]either the Court nor Defendants are obligated to search through the Complaint and its voluminous exhibits in order to glean a clear and succinct statement of each claims for relief." *Id.* (alteration in original) (quoting *Windsor v Colorado Dep't of Corr.*, 9 F. App'x 967, 968 (10th Cir. 2001)).

Although Plaintiff is proceeding *pro se*, he is not excused from complying with the Federal Rules of Civil Procedure. *See Buckner v. Hilton Glob.*, No. 3:24-CV-375, 2025 WL 890175, at *13 (W.D. Ky. Mar. 21, 2025), *aff'd sub nom. Buckner v. Hilton Worldwide Holdings Inc.*, No. 25-5354, 2025 WL 4693129 (6th Cir. Oct. 28, 2025) ("The fact that [a] civil action is pursued *pro se* does not relieve [a] party from compliance with the Federal Rules of Civil Procedure."); *Mooney v. Cleveland Clinic Foundation*, 184 F.R.D. 588, 590 (N.D. Ohio 1999) (finding that *pro se* litigants are required to follow the rules of civil procedure).

As previously noted, Plaintiff's Complaint and Amended Complaint together total 1,153 pages, making an initial screen nearly impossible. While Plaintiff represents that the grounds of this lawsuit are the "reprisal for and breach of his 2024 D.R.A.C. and 2025 EEOC agreements with USPS," he has not sufficiently explained what specific actions and by whom constituted a breach. Further, within his voluminous exhibits, Plaintiff includes documentation related to four of his previous actions with EEOC [*see, e.g.*, Doc. 10-1 pp. 26–29, 46–51; Doc. 10-2 pp. 84–91, 94–95], and he references four worker's compensation claims that are being challenged [Doc. 2-1 p. 5]. Plaintiff does not clearly state, however, whether these claims are part of this action, nor does he include any factual information that would enable the Court to analyze the viability of any such claims, including the specific decisions being challenged and identity and roles of persons directly involved. Though Plaintiff attaches over a thousand pages of exhibits, "culling those references from the other evidential material and treating them as factual allegations for purposes of reviewing

7

the Complaint would be a bridge too far." *Boone v. Viral Podcast*, No. 3:25-CV-00449, 2025 WL 3709012, at *2 (M.D. Tenn. Dec. 22, 2025) (citing *Kensu v. Corizon, Inc.*, 5 F.4th 646, 651 (6th Cir. 2021) (finding that "Rule 8 proscribes [ ] obfuscation of the plaintiff's claims," and that "[t]he district court and defendants should not have to 'fish a gold coin from a bucket of mud' to identify the allegations really at issue") (quoting *U.S. ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003)).

And finally, while Plaintiff asks that "USPS . . . take full responsibility and hold themselves fully accountable for [his] reported work[-]related injuries," Plaintiff does not allege any facts concerning a work- related injury.

In addition to the above noted deficiencies, the Court further cautions that under Federal Rule of Civil Procedure 20, "a plaintiff may not 'combine into one lawsuit unrelated claims against different defendants.'" *Cage v. Mich.*, No. 16-cv-11679, 2018 WL 3729062, at *1 (E.D. Mich. Aug. 6, 2018) (quoting *Robinson v. Rodarte*, No. 16-13691, 2017 WL 1017929, at *2 (E.D. Mich. Feb. 6, 2017), *report and recommendation adopted*, 2017 WL 994350 (E.D. Mich. Mar. 15, 2017)).

Instead of recommending dismissal, the Court will allow Plaintiff an opportunity to amend his Complaint in light of his pro se status. In his amended complaint, Plaintiff shall provide a short and plain statement of the relevant facts supporting his claims. *See* Fed. R. Civ. P. 8(a). Plaintiff's amended complaint should provide, to the extent applicable, the following details:

    a) the names and titles of all [defendants if known];

    b) . . . all relevant events, stating the facts that support Plaintiff's case including what each defendant did or failed to do;

    c) . . . the dates and times of each relevant event or, if not known, the approximate date and time of each relevant event;

d)  . . . the location where each relevant event occurred;

e)  . . . how each defendant's acts or omissions violated Plaintiff's rights and . . . the injuries Plaintiff suffered; and

f)  . . . what relief Plaintiff seeks from the Court, such as money damages, injunctive relief, or declaratory relief.

*Polite v. VIP Cmty. Servs.*, No. 20-CV-7631, 2020 WL 6064297, at \*3 (S.D.N.Y. Oct. 13, 2020). "Because Plaintiff's amended complaint will completely replace, not supplement, the original complaint, any facts or claims that Plaintiff wishes to maintain must be included in the amended complaint." *Id.*; *see also* E.D. Tenn. L.R. 15.1 (explaining that an amended complaint cannot incorporate the original complaint by reference).

Plaintiff shall clarify, which, if any, of his EEOC claims he wishes to appeal, noting the current status of each claim. Plaintiff's Amended Complaint **shall not exceed fifteen double spaced pages**. *See Finell v. Hill*, No. 2:25-CV-29, 2026 WL 1295563, at \*2 (S.D. Ohio May 12, 2026) ("Courts have discretion to impose page limitations." (citing *Alexander v. Harrison*, No. 21-1828, 2022 WL 13983651, at \*3 (6th Cir. 2022) ("[T]he district court did not abuse its discretion in imposing page limits[.]")).

Where appropriate, the Amended Complaint may refer to specific facts in attached documents, but Plaintiff is advised that he may not plead his case by vaguely asserting claims to relief in the Amended Complaint and relying on entire exhibits to supply facts not particularly referred to in the principal pleading. A statement in a document attached to a pleading may be incorporated by reference in the principal pleading, *see* Fed. R. Civ. P. 10(c), but "failure to specifically identify which portions of the ... exhibit[ ] [the plaintiff] intends to incorporate by reference into the Amended Complaint makes it impossible for the Court or the defendants to

9

ascertain the nature and extent of the incorporation, and the purported incorporation is therefore invalid." *United States v. Int'l Longshoremen's Ass'n*, 518 F. Supp. 2d 422, 462 (E.D.N.Y. 2007).

Plaintiff **SHALL** file his amended complaint on or before **August 14, 2026.**

**IT IS SO ORDERED.**

ENTER:

Debra C. Poplin
United States Magistrate Judge

10